ROBERT MULLENS, *Administrator, etc.*

*v.*

CLARENCE L. FRAZER, *et al.*

(Nos. 10191, 10192, and 10193)

Submitted April 25, 1950.  Decided May 23, 1950.

410

*Payne, Minor & Ray and Walter C. Price, Jr.,* for appellants *Clarence L. Frazer* and *D. R. Frazer.*

*G. C. Belknap,* for appellant *R. L. Sizemore, et al.*

*Wolverton & Callaghan,* for appellee.

RILEY, JUDGE:

Robert Mullens, administrator of the estate of Cletie Robert Mullens, deceased, instituted this suit in equity against Clarence L. Frazer, Verta B. Frazer, Virginia L. Frazer, Katie S. Frazer, D. R. Frazer, R. L. Sizemore and Mazie V. Sizemore, for the purpose of having set aside and declared void, in so far as the plaintiff's rights and interests are concerned, under Code, 40-1-1, as amended by Acts of the Legislature, Regular Session, 1933, Chapter 31, Section 1, three certain deeds, that is to say, a deed made by Clarence L. Frazer to R. L. Sizemore and Mazie V. Sizemore; a deed from Clarence L. Frazer to Verta B. Frazer for life, with remainder to Virginia L. Frazer and Katie S. Frazer; and a deed from Clarence L. Frazer to D. R. Frazer; and to have the real estate thereby conveyed sold to pay a certain judgment of the plaintiff against Clarence L. Frazer in the amount of six thousand dollars, which was rendered by the Circuit Court of Nicholas County on October 21, 1946. From a decree setting aside all said conveyances as in derogation of Chapter 40, Article 1, Section 1, of the Code, as amended, defendants, D. R. Frazer, Clarence L. Frazer, R. L. Sizemore and Mazie V. Sizemore, prosecute three separate appeals.

On April 18, 1946, the plaintiff herein instituted an action of trespass on the case against Clarence L. Frazer in the Circuit Court of Nicholas County for the sum of ten thousand dollars. A trial thereon at the May term of that court resulted in a hung jury. The case was then tried at the May, 1947, term, which again resulted in a hung jury. On the third trial of the case, which was at the August, 1947, term, at which a demurrer to the evidence was interposed, the jury rendered a conditional verdict for plaintiff in the amount of six thousand dollars, and a judgment of

the Circuit Court of Nicholas County was rendered in vacation on October 21, 1947, as appears from the bill of complaint and exhibits, but from an examination of the original record and further from an examination of a certified copy of the judgment order of said Circuit Court of Nicholas County, recently exhibited to the members of this Court, the judgment was entered at a special term thereof.

This record discloses that all of the necessary parties, except Clarence L. Frazer, were served with process. The defendant, D. R. Frazer, a brother of the defendant; Clarence L. Frazer, the defendant; Verta B. Frazer, wife of the defendant, Clarence L. Frazer; and the defendants, R. L. Sizemore and Mazie V. Sizemore, filed their separate answers to the bill of complaint, denying that the conveyances were voluntary and without consideration, or that they were made by Clarence L. Frazer with intent to hinder, delay and defraud the plaintiff, and that any of said defendants had notice of such intent, if it existed. The matter was referred to Claude H. Vencill, a special commissioner in chancery, by a decree entered on May 25, 1948. He was directed: (1) To take, state and report an accounting showing, among other things, the property owned by Clarence L. Frazer at the time of the institution of the suit which resulted in a judgment in favor of plaintiff; (2) what disposition of his property, if any, the said Clarence L. Frazer had made during the pendency of the suit; (3) whether he had disposed of any of his property with intent to hinder, delay and defraud plaintiff in the collection of his judgment; and (4) whether any of defendants had notice thereof.

Depositions were taken before the special commissioner, who filed his report, dated September 30, 1948, reporting, among other things, that Clarence L. Frazer intended to defraud the plaintiff, which intent was known to the other defendants at the time of the execution of the deeds to them. The special commissioner also made a finding in regard to a taxi business sold by Clarence L. Frazer to

D. R. Frazer, but as to such business evidently the plaintiff has abandoned any claim.

The circuit court overruled the exceptions of the defendants, except Clarence L. Frazer, to the report.

In the course of these proceedings, it was found that the defendant, Clarence L. Frazer, had not been served with process, and was not a party to this proceeding. But by order entered on December 27, 1948, plaintiff was awarded an order of publication against Clarence L. Frazer, which publication was completed on January 30, 1949. On February 15, 1949, the defendants, except Clarence L. Frazer, moved the court to set aside the order of reference and suppress the depositions because of lack of jurisdiction of all the necessary parties, Clarence L. Frazer not having been before the court when the order of reference was entered. A hearing was held, and the order filed. Plaintiff then moved the court to hear the evidence in open court, and the circuit court fixed February 18, 1949, as the date for the taking of such evidence. On that date the defendant, Clarence L. Frazer, appeared by counsel, and filed his written and verified answer; and moved the court to set aside the order of reference, and cancel and suppress the depositions as to him, which motion was likewise overruled.

Plaintiff then moved that the evidence be heard in open court, which motion was granted, and then the court proceeded to hear the witnesses for the plaintiff, which consisted only of asking them if they adopted the evidence given by them before the special commissioner; and additional time was allowed by the court until February 25, 1949, within which Clarence L. Frazer could offer proof in his behalf, on which date the defendant, Clarence L. Frazer having failed to cross examine plaintiff's witnesses or offer proof in his behalf, the court entered the final decree complained of, and then the court entered a decree ratifying and confirming the report, and ordering the sale of the three parcels of land, or so much thereof as may be necessary to satisfy the judgment of plaintiff.

The evidence in this case, according to the plaintiff's testimony, is that Clarence L. Frazer lived at Tioga, where he was postmaster and operated a taxi business; that Frazer owned some real estate, the value of which witness did not know; that D. R. Frazer bought the taxi business from Clarence L. Frazer, and operated it for about a year; that Frazer owned a parcel of land, on which his home and the post office were located, a part of which he sold to R. L. Sizemore, who is his brother-in-law, on which was located a cinder block building; and that the action of trespass on the case for the alleged wrongful death was tried three times. The Clerk of the Circuit Court of Nicholas County read into the record the three deeds made by Clarence L. Frazer to the defendants.

James H. Wolverton, one of the attorneys for plaintiff, testified that he had been associated with E. P. Alderson in the suit for about two years; that he was a member of the law firm of Wolverton & Callaghan, with offices at Richwood; that D. R. Frazer came to their offices in connection with the deed made by Clarence L. Frazer to him, in which the wife of Clarence L. Frazer had not joined, which matter was discussed with Mr. Callaghan, and as D. R. Frazer was leaving the office, he stopped at the door and remarked, "Clarence was getting rid of all his property as he had been sued in the Circuit Court"; and that no one was present at that time except the stenographer. R. A. Clapperton, who was called as a witness for plaintiff, testified that he prepared the deed made by Clarence L. Frazer to D. R. Frazer, dated July 15, 1947; and that there were no revenue stamps on the deed and that he had written thereon "No stamps required." Before the commissioner D. R. Frazer testified that he was twenty-six years old; that he was a brother of Clarence L. Frazer; and that he bought some real estate from Clarence L. Frazer in 1947; that the deed was dated July 15, 1947; that he paid five hundred and fifty dollars in cash for the property and had a receipt therefor, and introduced the deed and receipt into evidence; that Clarence L. Frazer had acquired the land from Austin Mearns in 1947; and that he and his brother, Roy Frazer, had tried to buy the property from

Mearns within two weeks before July 3, 1947; that Mearns first wanted six hundred fifty dollars for it, but agreed to take five hundred fifty dollars for it, but later Mearns refused to sell; that he went to Clarence L. Frazer the next morning and aked him to try to buy the property for him; that Clarence L. Frazer did buy the property on July 3, 1947, for five hundred and fifty dollars; and that it was conveyed to him on July 15, 1947, when he paid to Clarence L. Frazer five hundred and fifty dollars; that after he acquired the property he started the construction of a building thereon, and it became necessary for him to borrow some money; that he went to the offices of Wolverton & Callaghan to have a deed of trust and note prepared, as Mr. Kincaid, the officer of the Farmers and Merchants Bank of Summersville had told him to do; and that the deed of trust and note were there prepared.

We have already determined that plaintiff has a valid judgment entered at a special term of the Circuit Court of Nicholas County. That question, however, is moot, in view of the character of this suit. Code, 40-1-1, is designed expressly to protect "creditors, purchasers *or other persons*" (italics supplied) against fraudulent conveyances; and the statute, being remedial, like all other statutes against fraud, is to be liberally interpreted and expounded for the suppression of fraud. *Harden* v. *Wagner,* 22 W. Va. 356, pt. 4 syl. This Court, applying the rule of liberal construction in *Thomas* v. *Lupis,* 96 W. Va. 100, pt. 1 syl., 122 S. E. 365, 39 A. L. R. 176, held that Code, 40-1-1 "applies to one who has a right to recover damages for a tort; and one so entitled may maintain a suit to set aside a deed so made, without having his claim reduced to judgment." In that case plaintiff obtained a verdict for damages for a tort and, pending a motion for a new trial, instituted his suit to set aside certain alleged fraudulent conveyances. "If plaintiff was not strictly a creditor", the Court said, "he was in the class of 'other persons' and therefore within the terms of the statute." See also Judge Brannon's concurring opinion in *Scraggs* v. *Hill,* 43 W. Va. 162, 172, 27 S. E. 310, 17 A. L. R., 740n, citing *Greer* v. *Wright,* 6 Gratt. 154. To the effect that, prior to the Virginia Code, 1849, a

creditor could not resort to a court of equity to prevent any disposition which a debtor might make of his property, unless such creditor first obtained a judgment in a court of law as to real property, and judgment and execution as to personal property, see 9 M. J., Fraudulent and Voluntary Conveyances, Section 70. But now, by a statute in both West Virginia and Virginia, a creditor need not reduce his claim to judgment as a prerequisite to his right to maintain a suit to set aside fraudulent or voluntary conveyances. *Rine* v. *Compton,* 115 W. Va. 379, 176 S. E. 429. See *Caflisch Lumber Company* v. *Lake Lynn Lumber & Supply Co.,* 119 W. Va. 668, 195 S. E. 854; *Crickmer* v. *Thomas,* 120 W. Va. 769, 200 S. E. 353.

The serious jurisdictional question presented by this record is the fact of the absence of Clarence L. Frazer, the grantor in the deeds under attack, as a formal party defendant at the outset of this suit and before the decree of reference was entered. In a suit such as this, under Code, 40-1-1, as amended, unless a grantor acts as a mere mediary to transfer title, both the grantor and his alienee are necessary parties. *Solins* v. *White,* 128 W. Va. 189, 36 S. E. 2d 132; *Pappenheimer* v. *Roberts,* 24 W. Va. 702; 1 Miller, Hogg's Equity Procedure, 3d Ed., Section 70. The rule as to a creditor acting as a mediary is discussed in the *Solins* case, and generally in the cases of *Morgan* v. *Ice,* 80 W. Va. 273, 92 S. E. 340, and *Kirby* v. *Steele,* 65 W. Va. 719, 64 S. E. 919. See also generally 9 M. J., Fraudulent and Voluntary Conveyances, Section 72.

In the instant case, however, in the conveyances to the Sizemores and Clarence L. Frazer's conveyance to his wife and children, the grantor clearly acted as principal and not as mediary. If, however, D. R. Frazer's position is correct that Clarence L. Frazer acted as mediary for his brothers, D. R. Frazer and Roy Frazer, for the purchase of the property from Austin Mearns on July 3, 1947, and that at the time of the conveyance from Clarence L. Frazer to D. R. Frazer, on July 15, 1947, the latter repaid to Clarence L. Frazer the five hundred fifty dollars which defendant, D. R. Frazer, claims Clarence L. Frazer paid

to Mearns, Clarence L. Frazer as to that transaction was not a necessary party, and, by the same token, if D. R. Frazer's position is correct, the transaction was not fraudulent as to plaintiff's claim, because Clarence L. Frazer, and not Austin Mearns, is the judgment debtor. The soundness of this latter position will be hereinafter discussed with reference to the appeal of D. R. Frazer.

Clarence L. Frazer, the alleged fraudulent alienor, not having been made a formal party to this suit at its outset, at the time of the hearing before the special commissioner and the filing and confirmation of the commissioner's report, the proceedings before the special commissioner and the circuit court's action on his report are void and have no force and effect. As Clarence L. Frazer was the alleged fraudulent alienor, his absence as a party may be taken advantage of by other defendants in the case, who may be affected by any decree entered by the court in the absence of Clarence L. Frazer as a formal party to the suit. In *McCoy's Ex'or* v. *McCoy's Devisees,* 9 W. Va. 443, pt. 1 syl., this Court held that no decree should be entered affecting the interests of an absent defendant, unless he appears "(if he be not otherwise brought before the court)"; and further in syllabus 2 of that case, this Court held that an objection to the lack of jurisdiction of a necessary defendant "may be taken by other defendants who may be affected by the decree against him; and if made in the Appellate Court will prove fatal, though the absent defendant was not a party to the appeal." See also *Styles* v. *Laurel Fork Oil & Coal Co.,* 45 W. Va. 374, 379, 380, 32 S. E. 227. It follows that the motion of Clarence L. Frazer's co-defendants to suppress the depositions was proper.

What then was the effect of the order of publication commenced in the office of the clerk of the circuit court on December 27, 1948, and completed on January 30, 1949; the decree of the circuit court entered on November (December) 23, 1948, referring the cause to rules "for the purpose of the issuance and service of process by way of an order of publication as against the defendant Clarence

L. Frazer and for the purpose of maturing this cause as to him"; the filing of the defendant, Clarence L. Frazer's, answer, denying the material allegations of the bill of complaint; the motion of the defendant, Clarence L. Frazer by R. A. Clapperton, acting on behalf of Walter C. Price, Clarence L. Frazer's attorney, made on February 18, 1949, for a continuance in order to give Clarence L. Frazer "an opportunity to tender such evidence on his behalf as he may have"; and the hearing of the cause by the circuit court in open court? In this regard, the recitals of the final decree complained of entered on February 25, 1949, and the happenings in open court on February 15, 18 and 25, 1949, are most important. On February 15, 1949, the case came on to be heard upon the report of Claude H. Vencill, together with the evidence and exhibits. To this report all of the defendants, except Clarence L. Frazer, excepted, and moved the court to set aside the order of reference theretofore entered; to suppress the depositions taken before Claude H. Vencill, special commissioner; and to disregard the commissioner's report on the ground that the defendant, Clarence L. Frazer, being a necessary party, had not been made a formal party defendant by service of process or the entry of an order of publication. On that date the plaintiff moved the court again to hear the evidence in open court, and the court fixed February 18, 1949, as the date for the taking of further evidence. On February 18, 1949, Clarence L. Frazer, by R. A. Clapperton, acting for Clarence L. Frazer's attorney, Walter C. Price, filed his answer, and moved the court to set aside the order of reference as to him, cancel and suppress the evidence taken before the commissioner, which motion was overruled. Clarence L. Frazer, by R. A. Clapperton, acting for Clarence L. Frazer's attorney, Walter C. Price, then moved that the court reset the cause for hearing in order to give Clarence L. Frazer an opportunity to tender such evidence in his behalf as he might have. On that occasion the court ordered that Clarence L. Frazer's answer be filed; that the motion for a continuance be denied; but held that the court would be at the court house in Summersville "on

next Friday" [February 25, 1949,] "for any purpose that anyone wishes to take up, and rather than continue this matter, I will hear what evidence you have at the present time and continue any additional witnesses until that time." Thereupon all the witnesses who testified for the plaintiff before the special commissioner were examined, and answered affirmatively that they then adopted their testimony as taken before the commissioner "to the same effect as if it were fully and completely repeated here." Opportunity was then given for the cross examination of these witnesses, but R. A. Clapperton stated that he was not appearing in this matter as attorney for Clarence L. Frazer, and declined to cross examine.

We think that the order of publication, having been completed as to the defendant, Clarence L. Frazer, and the defendant, through his attorney, Walter C. Price, acting through R. A. Clapperton, having filed an answer dealing categorically and directly with the merits of the case, and having made a motion for a continuance, a general appearance was effected. 1 Miller, Hogg's Equity Procedure, 3d Ed., Section 37, Notes 95, 96 and 97; 2 M. J., Appearances, Section 14, and cases cited under Notes 19 and 20.

The circuit court in electing to hear the case in open court, and after the filing of the answer of the defendant, Clarence L. Frazer, did so in conformity with Rule X of the Rules of Practice and Procedure for Trial Courts, promulgated by this Court by order entered on April 10, 1936, which provides in part: "Chancery causes may be heard and determined in open court. In cases so heard, the witnesses shall personally appear before the judge to testify orally, unless their depositions shall be taken out of court for reasons sufficient in actions at law or by order of the judge made for good cause; * * *." 116 W. Va. lx. Clarence L. Frazer was truly before the court when it proceeded to hear the case *de novo,* as we think the court had a right to do. Clarence L. Frazer, being before the court, and the case having been heard *de novo,* only he, who made the motion for a continuance, can complain of

the trial chancellor's refusal thereof. A motion for continuance is always addressed to the sound discretion of the trial court in all circumstances of the case. 4 M. J., Continuances, Section 2, and cases cited under Note 2. We cannot in this case say that the trial court abused its discretion in this regard. Walter C. Price, Clarence L. Frazer's attorney, was in court a few days before the proceedings on February 18, 1949. After the answer was filed on February 18, 1949, he had until February 25, 1949, within which to introduce witnesses on his behalf, or recall plaintiff's witnesses for cross examination. In addition, the answer when filed showed that it was sworn to on February 5, 1949. So as early as the latter date, he was informed of the pendency of the proceedings. In these circumstances we think that whatever defense to the instant suit he may have had, he had plenty of opportunity to present it and be heard on the merits of the case. So in these circumstances we must and do appraise the case as though in the first instance Clarence L. Frazer had been made a party defendant by service of process or by order of publication, and the proceedings are just as valid as though prior to the general appearance of Clarence L. Frazer, by answer and motion for a continuance, he had been served with process.

As heretofore indicated the circuit court set aside three allegedly fraudulent conveyances from Clarence L. Frazer to (1) his wife and children, Verta B. Frazer, Virginia L. Frazer, and Katie S. Frazer; (2) to his brother-in-law and sister-in-law, R. L. Sizemore and Mazie V. Sizemore; and (3) to his brother, D. R. Frazer. These conveyances will be considered *seriatim*.

Of course, Clarence L. Frazer's conveyance to his wife and children being voluntary and clearly in derogation of the rights of his creditor, Robert Mullens, administrator of the estate of Cletie Robert Mullens, deceased, was properly set aside by the court. Such a conveyance, though valid as between the immediate parties, 9 M. J., Fraudulent Conveyances, Section 64, and cases cited under Note 15, is void as to plaintiff's claim. *Good* v. *Good,* 39 W. Va. 357, 19 S. E. 382.

But the conveyance to the Sizemores presents an entirely different question, for the record clearly shows that the Sizemores paid a consideration of three thousand dollars for the property, and shortly thereafter expended from eighteen hundred to two thousand dollars for its improvement. But because the grantees were, respectively, brother-in-law and sister-in-law of the grantor, the transaction, though not void or voidable *per se,* should be carefully considered, and is subject to close scrutiny. In *North American Coal & Coke Co.* v. *O'Neal,* 82 W. Va. 186, pt. 6 syl., 95 S. E. 822, this Court said: "While dealings between persons standing in the relationship of brother-in-law and sister and affecting injuriously the rights of others are not presumptively fraudulent yet such relationship when fraud is charged calls upon the court for careful and close scrutiny of the transactions and conduct of and evidence offered by such persons and when such transactions involve the payment of large sums of money the testimony of such parties when uncorroborated by receipts, memoranda, and other documentary evidence must be clear, positive, definite, consistent with other evidence offered and free from contradiction." Notwithstanding the foregoing rule, the burden of proving fraud rests on the party alleging it. *Colston* v. *Miller,* 55 W. Va. 490, pt. 1 syl., 47 S. E. 268; *Miller* v. *Correll,* 97 W. Va. 215, pt. 2 syl., 124 S. E. 683; *Kesling* v. *Mick,* 103 W. Va. 485, 138 S. E. 386; *Hutchinson* v. *Walton,* 119 W. Va. 709, 710, pt. 1 syl., 196 S. E. 20; 9 M. J., Fraudulent and Voluntary Conveyances, Section 94.

When, as in the instant case, the grantor is involved in litigation which eventually results in a substantial judgment and during the course of such litigation, he transfers all of his property to his relatives, there arises a presumption of fraudulent intent; and to overcome this presumption the courts require more strict proof of good faith than if the transaction had been between strangers. Thus the correct rule in this jurisdiction seems to be that mere relationship by consanguinity or affinity does not shift the burden from the plaintiff to the defendant. *Rosenbloom & Co.* v. *Russ,* 103 W. Va. 203, 139 S. E. 846; *Hutchinson* v.

*Walton, supra.* In view of Clarence L. Frazer's impending financial embarrassment because of the action at law pending against him, his evidently fraudulent and unconscionable actions in disposing of all of his property in Tioga, leaving or resigning his position as postmaster in that community, and deserting his wife and children, the trial chancellor was entirely justified in affirming the finding of the commissioner that Clarence L. Frazer's disposal of his property in all the circumstances portrayed by this record was in fraud of his creditor, Robert Mullens, administrator of the estate of Cletie Robert Mullens, and the plaintiff in the litigation which thereafter resulted in the judgment against Frazer in the amount of six thousand dollars. But whether the Sizemores knew of such fraudulent intent on the part of their grantor, Clarence L. Frazer, when they purchased from him the property described in the Frazer-Sizemore deed and paid the sum of three thousand dollars, which the special commissioner found was adequate consideration for the conveyance, must be decided affirmatively if we are to sustain the finding of the trial chancellor. If, when the Sizemores altered their position by the payment of the consideration, they were without notice of their grantor's fraudulent intent, they are purchasers for valuable consideration without notice, and the deed to them is not void under the provisions of Code, 40-1-1, as amended, which reads: "This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." See also *Bank of Marlinton* v. *McLaughlin,* 123 W. Va. 608, 17 S. E. 2d 213.

In furtherance of their position, counsel for the plaintiff rely upon the relationship by affinity between Clarence L. Frazer and the Sizemores, and further upon the circumstances in which the conveyance was made. It is asserted that the Sizemore deed was made on September 25, 1946, about five months after plaintiff had instituted his action at law in the Circuit Court of Nicholas County against the defendant, Clarence L. Frazer, and the first trial of the

law action had been had at the May, 1946, term of court; that R. L. Sizemore went to attorney R. A. Clapperton at Summersville, who represented Clarence L. Frazer, and "asked him to make the deed and see if there was anything against it." Attention is invited to a claimed inconsistency in R. L. Sizemore's testimony in that he first testified that the deed was given to him, and that he took it to Clapperton, and then testified that he asked Clapperton to prepare the deed and see if there was anything against the property.

Plaintiff's counsel stress the fact that R. L. Sizemore was a resident of St. Albans, in Kanawha County; and that he sought the services of an attorney to protect him in the pending transaction with Clarence L. Frazer and went to the latter's attorney. Doubt is expressed as to the truthfulness of R. L. Sizemore's testimony that he did not know that attorney Clapperton represented Clarence L. Frazer. From these circumstances plaintiff's counsel assert, as the commissioner found, that the Sizemores had knowledge of Clarence L. Frazer's fraudulent intent in making the conveyance in the furtherance of a general scheme to dispose of all of his property, and place it beyond the reach of his creditor, the plaintiff. But, as we have stated above, though the instant transaction must be scrutinized carefully because of the relationship by affinity between the parties, the ultimate burden of proof in this suit rests upon the plaintiff to prove the Sizemores' knowledge of Clarence L. Frazer's fraudulent intent. Sizemore testified, without contradiction, that in addition to paying three thousand dollars for the property, he spent approximately eighteen hundred to two thousand dollars for improvements, and he denied without any direct evidence in contradiction of his testimony that he had "any knowledge of Clarence L. Frazer's trouble until the summons [being the summons in this equity suit] were served upon me."

The plaintiff administrator testified in the hearing before the commissioner on August 9, 1948, that Clarence L. Frazer lived at Tioga; that he was the owner and operator of taxi cabs and a mercantile business there; that he was

postmaster at that place; and that "he has been gone about a year" at the time witness testified. As the Sizemore deed was made on September 25, 1946, Clarence L. Frazer was in business in Tioga and was postmaster there for more than a year thereafter. Witness Mullens testified that so far as he knew "They claimed" he had plenty of money.

In the determination whether the Sizemores had knowledge of their grantor's fraudulent intent, the circumstances, which led them to purchase the property have a material bearing on that issue. The Sizemores were living in Kanawha County, where R. L. Sizemore was employed at one of the chemical plants, and in order to get a place where the atmosphere was less deleterious than at the place of his employment, he decided to purchase a farm, but not succeeding, he testified without contradiction, that he went to Clarence L. Frazer and purchased the property in question in furtherance of his desire to change his residence and occupation and go into the mercantile business. It was Frazer who fixed the price of three thousand dollars for the property, which, as above stated, the special commissioner found to be a fair and adequate price. He paid three thousand dollars, two thousand in cash and one thousand by notes through the bank; and promptly after the transaction was closed took possession of the property and went into the mercantile business. These are all the facts pertinent to the question whether the Sizemores were purchasers for valuable consideration without notice.

The statement imputed to D. R. Frazer by James H. Wolverton that "As Mr. D. R. Frazer was leaving the office [the law offices of Wolverton & Callaghan at Richwood], he paused in the waiting room and remarked that Clarence was getting rid of all his property as he had been sued in the Circuit Court," cannot be used against the Sizemores for they were not present at the time this alleged remark was made. *Bishoff* v. *Hartley*, 9 W. Va. 100, 104, 105; *Colston* v. *Miller*, 55 W. Va. 490, 47 S. E. 268, citing *Robinson* v. *Pitzer*, 3 W. Va. 335; *Houston* v. *McCluney*, 8

W. Va. 135; *Crothers' Adm'rs.* v. *Crothers,* 40 W. Va. 169, 20 S. E. 927. See also *Irby* v. *Gardner,* 157 Va. 132, 160 S. E. 81; *Neff* v. *Edwards,* 148 Va. 616, 139 S. E. 291.

We are of opinion that the circuit court was not justified, in view of the foregoing evidence bearing on the Sizemore transaction, in setting aside the deed. Plaintiff, in our opinion, has not sustained the burden of proof, which, notwithstanding the relationship by affinity which existed between the parties, rests on the plaintiff in a suit such as this. It is inconceivable to us that if the Sizemores thought that the instant transaction was in furtherance of a fradulent scheme, they would leave the community in which R. L. Sizemore was gainfully employed, go. to a distant community, enter into the mercantile business, pay three thousand dollars for property in which they were to live and engage in business, and then spend eighteen hundred to two thousand dollars more improving that property, if they thought or had reason to believe that the transaction was vulnerable in a court of equity at the instance of the plaintiff in this suit. Whatever presumption may have arisen from the relationship of the parties and the circumstances in which Clarence L. Frazer disposed of all his property, the distance from their respective places of residence at the time the transaction was consummated and the circumstances leading up to and resulting in the conveyance to them, is sufficient to overcome such presumption, and the plaintiff has not, in our opinion, with sufficient clarity and certainty sustained the burden of proving that these defendants had knowledge of Clarence L. Frazer's fraudulent intent.

As heretofore suggested, if Clarence L. Frazer was a mere mediary for the purpose of transferring the Mearns property from Austin Mearns and his wife to D. R. Frazer, he was, under the authority of *Pappenheimer* v. *Roberts, supra; Solins* v. *White, supra*; Miller, Hogg's Equity Procedure, Section 70, though a grantor in the deed sought to be set aside, not a necessary party to this suit; and, by the same token, the conveyance from Clarence L. Frazer to his brother, D. R. Frazer, was not fraudulent as against plain-

tiff's claim. We are thus required to consider the circumstances in which the allegedly fraudulent conveyance to D. R. Frazer was made. In this regard the evidence in many respects is without substantial contradiction.

In the summer of 1947 D. R. Frazer negotiated for himself and his brother, Roy Frazer, with Austin Mearns for the purchase of three-eights of an acre of land in the vicinity of Tioga. Mearns originally asked six hundred fifty dollars, but as D. R. Frazer was buying the land with Roy Frazer, and Mearns owed Roy Frazer fifty dollars, Mearns agreed to take six hundred dollars for the property, which D. R. Frazer testified "would leave me paying $550.00 and my brother Roy $50.00." Later Mearns withdrew this offer, and informed D. R. Frazer that he would not sell any of the land. Thereupon, D. R. Frazer went to his brother, Clarence L. Frazer, and Clarence L. Frazer "bought the land that we were trying to buy" for the same price that Mearns had previously offered it. By deed dated July 3, 1947, Mearns and his wife conveyed the property to Clarence L. Frazer, and Clarence L. Frazer received from Austin Mearns and Neva Mearns, his wife, a receipt for- five hundred and fifty dollars, dated July 3, 1947, which stated that it was "For Lot of 3/8 acres." On July 15, 1947, according to D. R. Frazer's testimony and the exhibits therewith, Clarence L. Frazer conveyed the property to D. R. Frazer, who paid Clarence L. Frazer the sum of five hundred fifty dollars, and obtained the latter's written receipt, dated July 15, 1947, for five hundred fifty dollars, which receipt stated that it was "For 3/8 acre lot." Thus Clarence L. Frazer obtained the property on July 3, 1947, and held it for twelve days before he conveyed it to D. R. Frazer.

The trial chancellor in finding that the conveyance of the Mearns property from Clarence L. Frazer to his brother, D. R. Frazer, was fraudulent as to plaintiff, necessarily held that Clarence L. Frazer became the real owner of the property, and later conveyed it to D. R. Frazer. In view of the fact that all of Clarence L. Frazer's dealings with reference to his property are steeped in

fraud, of which this record discloses that D. R. Frazer had knowledge, we cannot say that on the question whether Clarence L. Frazer acted as principal or mediary the trial chancellor erred.

D. R. Frazer was a brother of Clarence L. Frazer, working with him for a comparatively long period of time in Clarence L. Frazer's taxi business in Tioga and its vicinity. He is quoted as having said in the presence of and according to the testimony of James H. Wolverton, a reputable attorney, practicing in Nicholas County that "As Mr. D. R. Frazer was leaving the office, he paused in the waiting room and remarked that Clarence [meaning Clarence L. Frazer] was getting rid of all his property as he had been sued in the Circuit Court." This remark was made as he was leaving through the front door; and, according to Wolverton's testimony, it was made after the first trial and before the second trial of the law action. D. R. Frazer denies that he made such statement, but his denial simply presents a conflict of the evidence on this question, which has been solved in favor of the plaintiff. We cannot say that Wolverton's testimony is incredible: whether true or not it is worthy of belief. The trial chancellor believed it, evidently based his findings in part upon it, and, as we cannot say that he was clearly wrong in solving this conflict and appraising the entire circumstances in which the conveyance of the Mearns property from Clarence L. Frazer to his brother, D. R. Frazer, was made, we cannot disturb his finding. In equity the finding of a trial chancellor will not be disturbed on appeal unless it is clearly wrong or against the clear preponderance of the evidence. *Atwater & Company* v. *Fall River Pocahontas Collieries Co.,* 119 W. Va. 549, 195 S. E. 99; *Highland* v. *Davis,* 119 W. Va. 501, 195 S. E. 604; *Bennett* v. *Neff,* 130 W. Va. 121, 42 S. E. 2d 793.

D. R. Frazer's case differs from the Sizemore case in several important respects. D. R. Frazer was actively associated with his brother, Clarence L. Frazer, in business in Tioga, while the law action was pending at Summersville, the county seat. Three jury trials were had: in the

**428**

first two there was a hung jury, and in the trials the jury was brought to view the place at which plaintiff's decedent ' in the law action had been killed, which was in the vicinity of Tioga. It is difficult for us to believe that D. R. Frazer did not know of his brother's difficulty, and his nefarious actions with reference to his property. At least we think the trial chancellor had the right, as he did, to hold that D. R. Frazer at the time he accepted the conveyance of the Mearns property from Clarence L. Frazer had full knowledge of his brother's fraud. We therefore think that the trial chancellor's decree as to this transaction should be affirmed.

For the foregoing reasons we reverse the decree of the Circuit Court of Nicholas County as to the Sizemore conveyance, and affirm it as to the conveyance to D. R. Frazer, and remand the cause for the entry of a decree in accordance with the principles herein enunciated.

*Affirmed in part;*
*reversed in part;*
*remanded with direction.*